UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

ADAM IVAN MERKEL,                                  Case Number: 25-12619-7

             Debtor.

---

THOMAS O. WILMOT and
SANDRA RADZINSKI,

             Plaintiffs,

v.                                                 Adversary Number: 26-00013

ADAM IVAN MERKEL,

             Defendant.

---

## DECISION ON DEFENDANT'S MOTION TO DISMISS

Before the Court for ruling is the motion of Defendant Adam Merkel ("Merkel") to dismiss the complaint of the Plaintiffs, Thomas Wilmot ("Wilmot") and Sandra Radzinski ("Radzinski"). The complaint alleges that each Plaintiff sustained injury and damages because of a willful and malicious act of Defendant.

For the reasons below, Defendant's motion to dismiss the complaint is granted.

### FACTS

The following facts are not contested and stipulated.[1]

---

[1] Dkt. No. 8 at 7-8, ¶¶ 1-2.

Defendant and Samuel Hurlburt are co-owners of H & M Retailers d/b/a Yeti Motors ("Yeti"). In October 2022, Wilmot bought a 2003 Chevrolet Silverado from Yeti. Radzinski was not a party to the purchase agreement but agreed to pay the down payment. Radzinski delivered a check payable to Yeti in the amount of $3,000.00 for Wilmot's purchase.

Two days later, Radzinski stopped payment on her check. She offered at some point to return the truck. The offer was refused by Yeti. She did not own the truck. Wilmot was the owner.

In November, Yeti sued Plaintiffs in Oneida County Small Claims Court. Merkel contacted Radzinski saying he hoped the matter could be resolved and he did not want to contact the authorities but that the down payment needed to be paid.

Cambrya Hurlburt, Samuel Hurlburt's wife, contacted the Oneida County Sheriff's Department with a copy of the purchase contract, Radzinski's check, and evidence Radzinski stopped payment on that check.

Wilmot and Radzinski were interviewed by members of the Sheriff's Department. The Sheriff's Department seized and impounded the Silverado. Radzinski was arrested on a felony charge.

The District Attorney declined to pursue prosecution. The parties continue to be involved in civil disputes in state court.

Wilmot says he was injured by the loss of the use of the vehicle. Radzinski says she suffered humiliation, emotional distress, and physical hardship because of the arrest.

2

There are other facts in the complaint that have not been stipulated or agreed. Copies of a state court amended counterclaim against Yeti and an amended third-party complaint are also attached to the complaint here.[2]

The attachments are incorporated by reference in the complaint. To the extent that those attachments include facts alleged against Defendant, for the purpose of the motion to dismiss any such additional facts are taken as true. The complaint and its attachments, however, also contain allegations that are speculative, ultimate conclusions of fact, or conclusions of law.

Many of the allegations describe actions of members of the Oneida County Sheriff's Department. Plaintiffs do not repeat the allegations in those pleadings in the complaint. Instead, they simply incorporate them by reference. Taken as true for the motion, there are facts in those attachments to the complaint that bear on a decision.

Wilmot purchased the vehicle for use by his son in a snowplowing business. He says no substantial issues were disclosed with the vehicle. But, he says, the vehicle had defects when he picked it up.

---

[2] The Plaintiffs had been sued by Yeti in Circuit Court. Plaintiffs counterclaimed alleging unfair debt collection practices, failure to disclose facts regarding the vehicle, and criminal malicious prosecution by Yeti. The counterclaim does not assert any claims against Defendant.

The Plaintiffs filed the third-party action against the Defendant and Cambrya Hurlburt, Samuel Hurlburt, the Oneida County Sheriff, three deputies, and Oneida County. The third-party complaint asserted claims of malicious prosecution against Defendant and the Hurlburts. The remaining counts are claims under 42 U.S.C. § 1983 against the Sheriff, deputies, and County, and a count against one deputy for an additional claim of violation of Wis. Stat. § 968.255.

After leaving the lot in the vehicle, Wilmot noted a cracked windshield, nonoperating blinkers, and engine issues. Wilmot then pulled to the side of the road. He told Radzinski the defects were not disclosed and were significant. At the same time, he looked at the paperwork for the truck. He noticed the defects were listed. Wilmot told Radzinski the paperwork had been changed to list the problems and defects.

A Yeti employee and the Defendant began communicating with Radzinski regarding the check and payment. When Yeti asked when payment would be made, Radzinski said her purse had been stolen. She also said she would be in with a replacement.

Defendant emailed Radzinski stating, ". . . I hope we can keep this between us and I don't want to contact the authorities or anything, but we need the down payment." Radzinski then went to Yeti.

Although not the owner of the truck, Radzinski says she offered to bring the truck back. Defendant, apparently on behalf of Yeti, declined the offer noting the truck was in the name of Wilmot. Radzinski also took $500 to Yeti offering it to settle the down payment issue.

Radzinski refused to pay the balance of the down payment. Yeti filed a small claims action against Plaintiffs. Plaintiffs contested the complaint. Mediation was ordered.

Cambrya Hurlburt told her husband and Defendant that the stop payment on the check and failure to pay for the truck may be criminal actions.

4

On the other hand, the Clerk of Small Claims had told Defendant it was a civil matter.

Copies of the paperwork for the vehicle purchase together with copies of Radzinski's check and the stop payment were taken by Cambrya Hurlburt to the Sheriff's Office. This report to the Sheriff was made after she spoke to her husband and Defendant.

Deputies spoke with Wilmot. They then impounded the vehicle, aware there was a dispute between Plaintiffs and Yeti. No further action was taken by the Sheriff's Office with respect to Wilmot.

On learning of the impounding of the vehicle, Radzinski went to the Sheriff's Office. During her interview with Sheriff deputies, Radzinski confirmed stopping payment on the check after she learned about the problems with the vehicle. She admitted her statements about delay in payment because of a lost purse and coming in later with a replacement were lies. She also told the deputies she believed this was a civil dispute that should be addressed in civil court.

The arresting officer prepared a probable cause statement and arrested Radzinski. She was processed and placed in a holding cell for several hours. She was eventually permitted by a judge to sign a cash bond and was released. The district attorney then declined to prosecute.

### JURISDICTION

This Court has jurisdiction over this proceeding and the issues before it pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C.

§§ 157(b)(2)(B) and 157(b)(2)(I). Venue is proper under 11 U.S.C. §§ 1408 and 1409. The Court may enter final judgment. 28 U.S.C. §§ 157(b)(1). All bankruptcy cases and proceedings filed in the Western District of Wisconsin have been referred to the bankruptcy judges. *See* Western District of Wisconsin Administrative Order 161 (July 12, 1984); 28 U.S.C. § 157(b)(1).

## DISCUSSION

### I.  Rule 12(b)(6) Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7012(b), provides that a defendant may move to dismiss the complaint for failure to state a claim upon which relief can be granted. There are two hurdles to clear to survive the motion. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

First, the complaint must describe the claim in enough detail to give the defendant fair notice of its nature. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. See *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Every allegation that is well-pleaded by a plaintiff is taken as true in ruling on the motion. *See Berger v. NCAA*, 843 F.3d 285, 289-90 (7th Cir. 2016).

Second, the claim must be "plausible on its face," *Twombly*, 550 U.S. at 570, meaning the plaintiff's right to relief must rise above a "speculative level." *Twombly*, 550 U.S. at 555; see also *Cornielsen*, 916 F.3d at 598. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Lewis v. City of Chi.,* 914 F.3d 472, 475 (7th Cir. 2019).

Plaintiff must articulate facts that, when accepted as true, state a claim upon which relief can be granted, and a plaintiff cannot rely upon "labels and conclusions . . . [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## II. <u>Motion to Dismiss and Section 523(a)(6)</u>

Section 523(a)(6) bars debtors from discharging debts for "willful and malicious injury" by a debtor. To show willful and malicious injury by a debtor to another person or property of another under 11 U.S.C. § 523(a)(6), plaintiffs must show: (i) defendant caused an injury, and that (ii) defendant acted willfully, *and* (iii) maliciously. *In re Calvert*, 913 F.3d 697, 700 (7th Cir. 2019) (quoting *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013)); *see also In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994); and *Silver-Hacker v. Allen (In re Allen),* 653 B.R. 895, 902 (Bankr. N.D. Ill. 2023).

None of these terms are defined by the Bankruptcy Code, but precedent guides their application. "The term 'injury'" the Seventh Circuit has instructed, "mean[s] a 'violation of another's legal right, for which the law provides a

remedy.'" *First Weber*, 738 F.3d at 774 (quoting *Weinstein & Assocs., Ltd. v. Lymberopoulos (In re Lymberopoulos*), 453 B.R. 340, 343 (Bankr. N.D. Ill. 2011)). The section essentially "excepts debts resulting from intentional torts." *Groom v. Krook (In re Krook)*, 615 B.R. 479, 487 (Bankr. N.D. Ill. 2020).

For Plaintiffs' claims for relief under section 523(a)(6) to survive a motion to dismiss, they must plausibly allege that the Defendant acted with the actual intent to cause injury, not just an intent to act which then led to an injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-64 (1998). As our Circuit later explained, "a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012).

A.   Injuries to Plaintiffs

The injuries that are identified in the complaint are different for each Plaintiff. While the complaint itself does not separate the injuries, there are clear distinctions.

1.   *Injuries to Wilmot*

Wilmot says his truck was seized. He then went to the Sheriff's Office and was interviewed. He was released after the interview without any charges, but his truck was not returned. So, he lost possession and use of the vehicle. Loss of the use of the vehicle and incidental and consequential damages together with other unspecified pecuniary loss are the injuries identified.

He also argues that making a report to the Sheriff's Department violated the Wisconsin Consumer Act (WCA). While Wilmot purchased a vehicle from Yeti, there is no assertion that he fulfilled the terms of the purchase agreement. There is, of course, the dispute about the condition of the vehicle, but that has yet to be resolved.

The focus on the WCA is, however, misplaced. It is undisputed the vehicle was purchased for a business purpose. Wilmot was not a consumer or customer under the WCA. It was not purchased for personal, family, or household purposes. Wis. Stat. § 421.301(17).

Additionally, as discussed below, even if the WCA were to apply, it simply prohibits conduct done with knowledge or reason to believe that no right to such conduct exists.

Two non-attorneys provided opinions to Merkel about the nature of the dispute. The Clerk of Court said there was a civil dispute. That is true and evidenced by the collection action that was filed. Cambrya Hurlburt said it may be a crime. Merkel is not an attorney. He and Yeti provided copies of the documents to her and she took them to the Sheriff's Department. If there is the possibility that actions could constitute a crime, contacting law enforcement is a reasonable action, particularly when faced with competing views.

Even so, the complaint does state an injury to Wilmot. So the requirement that an injury be identified is satisfied for him.

2.   *Injuries to Radzinski*

Radzinski went to the Sheriff's Department after learning that Wilmot's truck had been impounded by deputies. The injuries she describes followed an interview she had with members of the Sheriff's Department. The injuries are emotional distress, humiliation, physical hardship related to missed medication and custodial conditions, out-of-pocket costs (bond and attorney's fees), and other special and general damages.

She was arrested and placed in jail. Ultimately, she posted a bond to obtain release. The injuries described in the complaint for Radzinski are the type of injuries that would be typical of injuries sustained in claims for tort liability.

Radzinski does not have any claims under the WCA. She was not a party to the purchase agreement, so any argument about the WCA is inapplicable to her. She did not enter into any consumer credit transaction. Wis. Stat. § 421.301(10). Radzinski was not a party to the vehicle purchase and didn't seek to obtain it on credit.

But for the purpose of the motion, the facts are sufficient to satisfy the requirement of an injury to Radzinski.

### III.  **The Complaint Fails to Plead the Injuries Were Willful or Malicious.**

Injury alone is not sufficient. To meet the standard for willfulness, the Plaintiffs must show "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau*, 523 U.S. at 61 (emphasis omitted); *First Weber*, 738 F.3d at 774 (quoting *Kawaauhau*, 523 U.S. at 61).

In this Circuit, willfulness is judged objectively and requires that a debtor intend injury or that the act was substantially certain to result in injury. This is separate and distinct from "malicious." The court of appeals has more recently affirmed the *First Weber* standard, again using the disjunctive, stating that malicious means that the debtor "acted 'in conscious disregard of [his] duties or without just cause or excuse.'" *In re Calvert,* 913 F.3d at 701; *First Weber,* 738 F.3d at 774 (quoting *Thirtyacre,* 36 F.3d at 700).

"Actual malice" means "[t]he deliberate intent to commit an injury, as evidenced by external circumstances." BLACK'S LAW DICTIONARY 1146 (11th ed. 2019). Maliciousness in the context of section 523 generally encompasses "implied or constructive malice as well as actual malice." *Littlefield v. McGuffey (In re McGuffey),* 145 B.R. 582, 586 (Bankr. N.D. Ill. 1992). Implied malice may be shown "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Navistar Fin. Corp. v. Stelluti (In re Stelluti),* 94 F.3d 84, 88 (2d Cir. 1996) (internal quotations omitted); *see also Lee v. Ikner (In re Ikner),* 883 F.2d 986, 991 (11th Cir. 1989) ("Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.").

So, the Defendant's actions must be both willful and malicious. This requires proof of two distinct elements—that the injury was both "willful" *and* "malicious." The act must be intentional, and an intended harm must be shown. An act leading to harm alone is not sufficient without intent. In other words, there must be facts showing that the Defendant wanted to cause the

11

consequences of the act or believe that those consequences were substantially certain to result from it. *See* RESTATEMENT (SECOND) OF TORTS § 8A (1965).

The consequences of the police report were different with regard to each Plaintiff. For Wilmot, his truck was impounded and he lost use of it. Radzinski, on the other hand, was arrested, booked, held in jail, and missed medication.

Judged objectively, the Court must consider whether the complaint contains facts that demonstrate Defendant intended injury or that the act was substantially certain to result in injury to each Plaintiff.

A.  Maliciousness

Plaintiffs primarily argue that Defendant's conduct was malicious because of an action taken without just cause or excuse or based on a knowingly wrongful act. The act was providing documents to Cambrya Hurlburt that were then taken to the Sheriff's Office.

1.  *The State Law Cases Do Not Support a Claim of Malicious Injury.*

Plaintiffs first draw parallels to bankruptcy and state court decisions involving nondischargeability under section 523(a)(6) and tortious conduct. Then, they point to the arrest of Radzinski and the seizure of Wilmot's truck.

The Plaintiffs assume there was no basis for possible criminal conduct. They postulate Merkel understood there was no possible basis for a police report. Further, because Cambrya had worked for the Sheriff's Department, they assume law enforcement exercised no independent judgment in the actions taken with respect to Plaintiffs.

While legal duties may depend on nonbankruptcy law, *First Weber* instructs that whether Merkel consciously disregarded those duties or acted without just cause or excuse—that is, with malice—are matters governed by federal law.

Plaintiffs rest the claim that each suffered a malicious injury on the state law elements of malicious prosecution. But the issue of nondischargeability is "a matter of federal law governed by the terms of the Bankruptcy Code."

While citing two federal cases, the Plaintiffs merely pay lip service to the application of the Code to the requirements for stating a claim under section 523(a)(6). They do so with a passing reference to *First Weber* and *Horton.*[3]

*First Weber* is cited for the proposition that a violation of rights may be an injury for which there is a remedy. In the same manner, *Horton* is identified for the proposition that violation of the WCA may show both a legal right and injury.

But *Horton* is not a case under the WCA. It simply was a claim under 11 U.S.C. § 523(a)(6) for a willful and malicious injury. There was no discussion of the facts or application to this case. There was no injury in the *Horton* case because self-defense under Wisconsin law meant the plaintiff could not show an injury.

---

[3] *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013); *Horton v. O'Keefe (In re O'Keefe)*, No. 23-02072-gmh, 2025 Bankr. LEXIS 509, at *12 (Bankr. E.D. Wis. Mar. 4, 2025).

In support of the argument there are claims for malicious injury, Plaintiffs rely almost exclusively on state law cases that were brought for malicious prosecution. All those cases are distinguishable on their facts.

There is a common thread in each case that is not present here. In each case an individual provided information to law enforcement that was either false, deceptive, contained material omissions, or was not based on any personal knowledge.

None of the state law cases cited by Plaintiffs contain similar or analogous fact patterns. The cases involved:

- A criminal prosecution based on statements from a railroad detective who did not know the facts. Even so, the facts given him were found to create probable cause in the mind of the prosecutor.[4]

- A bank manager, seeking to collect money owed, reported larceny knowing the report and facts were untrue.[5]

- Complaint about a post-dated NSF check led to a criminal complaint and arrest. The charge was later dismissed after the authorities discovered the check was post-dated. The decision focused on jury instructions to be given for a claim of malicious prosecution.[6]

- An order to show cause as to whether the plaintiff should be found in contempt in a visitation dispute. The attorney prepared and submitted a bench warrant. The judge signed it. The complaint failed to state a claim because there was no allegation the bench warrant was improperly issued or that the legality of the bench warrant was ever legally challenged.[7]

---

[4] *Elmer v. Chi. & N. W. Ry. Co.*, 257 Wis. 228, 247, 43 N.W.2d 244 (1950).

[5] *Lechner v. Ebenreiter,* 235 Wis. 244, 292 N.W. 913, 916-19 (Wis. 1940).

[6] *Peters v. Hall,* 263 Wis. 450, 57 N.W.2d 723 (Wis. 1953).

[7] *Strid v. Converse,* 111 Wis. 2d 418, 421, 331 N.W.2d 350 (Wis. 1983).

14

Those cases do not support a claim of malicious injury here. The information given to the Sheriff's Office in this case was not false.

Having been told that the stop payment might be a crime of theft, documents relevant to the transaction were taken to law enforcement. The purchase contract, check, and stop payment proof are true and correct copies and undisputed. Nothing about those items was false.

Here, there was an arrest, a bench warrant and termination of the warrant. The facts presented to the Sheriff's Office were considered by a judge. The judge signed the warrant and Radzinski was released. The district attorney declined prosecution of Radzinski.

Unlike the cases cited by Plaintiffs, there was never a criminal prosecution of Wilmot. Thus, the claim that criminal proceedings were malicious prosecutions of him cannot be sustained. No such proceedings existed or were terminated in his favor.

Merkel received information that the transactions with Plaintiffs were civil matters. He was also told they may be criminal. The sources of those comments were not attorneys.

Plaintiffs do not plead any facts that explain why Merkel knew or should have known that there was no possible crime. Instead, they simply say the district attorney declined prosecution. And so, they assume that means there was termination of criminal proceedings in favor of Radzinski.

15

District attorneys have prosecutorial discretion. Declining to prosecute does not mean a crime did not occur. It only means the office decided not to move forward with a criminal case at that time.

It is possible that an act can lead to both criminal charges and civil claims. Simply because Yeti held a claim against the Plaintiffs that could be brought in civil court does not exclude the possibility that the same facts could give rise to a criminal complaint.

The Sheriff's Office received information that was true in this case. It interviewed both Wilmot and Radzinski and then proceeded with an arrest of Radzinski. It was the Sheriff's Department and not Merkel that initiated any criminal proceeding. *Pollock v. Vilter Mfg. Corp.*, 23 Wis. 2d 29, 38, 126 N.W.2d 602 (1964).

Plaintiffs conclude, incorrectly, that the mere assertion of a claim of malicious prosecution under Wisconsin law must be sufficient to state a claim that is malicious for the purposes of section 523(a)(6). It is federal law that controls.

2. *Wilmot's Injuries Were Not Malicious*.

Loss of use of the vehicle is a plausible claim that an injury exists. But the injury must have been "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau*, 523 U.S. at 61.

Filing a police report or authorizing such a report to be filed by Cambrya Hurlburt was an intentional or knowing act. But there are no facts presented

16

by Plaintiffs that filing such a report demonstrates that Defendant intended injury or that the report was substantially certain to result in injury to Wilmot.

Wilmot purchased a vehicle. According to Wilmot, there were damages or defects to the vehicle according to him that had not been disclosed. The damages were, however, identified on the purchase documents he took with him from Yeti at the time of delivery of the vehicle. At least one defect should have been obvious—a crack in the windshield.

He agreed to pay a down payment of $3,000 for the vehicle. That was paid in the form of a check from Radzinski. Shortly after leaving Yeti, Wilmot pulled over and told Radzinski there were undisclosed problems and that the vehicle was not sold as represented.

Radzinski stopped payment on her check. She refused to make the down payment. Wilmot was aware the down payment had been stopped. There is no allegation that Wilmot—the truck purchaser—tried to make any payment.

Thus arose the dispute about payment for the purchase of the vehicle. One method of resolving that dispute would be a state court action. It could, for example, be a suit for payment or a replevin or both. A state court action was filed.

Taking possession of and title to a vehicle without making the agreed down payment and not immediately addressing the issues promptly after the issues were discovered is a civil matter. While it might raise the possibility of a crime under Wis. Stat. §§ 895.446 or 943.20, the report to the Sheriff's Office did not state or specify what specific laws might be at issue.

17

Instead, Merkel shared the documents about the purchase contract and down payment made and then stopped by Radzinski. Cambrya Hurlburt gave those to the Sheriff's Office.

No facts have been alleged that Merkel knew or should have known that reporting what became a stop payment on a check would result in the vehicle being seized.

The complaint just contains conclusory statements that the results of reporting the purchase contract, down payment check and the stop payment led to malicious injuries to Wilmot. Other than innuendo, it is based on the suggestion that because Cambrya had worked at the department in the past and was acquainted with the Sheriff's Department, she induced the Sheriff to seize the truck. And there is the supposition that she, her husband, and Merkel colluded and conspired to that result.

Plaintiffs allege no facts to show that Defendant knew a police report would result in an impound of the vehicle. Plaintiffs simply present the conclusion that the parties worked in concert to conclude that some undue influence was imposed on decisions by the Sheriff's Department. They posit without any presentation of fact that there was no independent judgment exercised by law enforcement and that it was a predetermined outcome that was or could be expected by Merkel.

It is law enforcement who takes and evaluates a report. The law enforcement agency decides whether to make an arrest and to seek a probable

cause determination. It is then the prosecutor who makes a decision on whether to proceed with charges.

While filing a report with the Sheriff may have affected the positions of Plaintiffs and Defendant in their dispute about payment, there are no facts alleged that support an objective finding that impounding the vehicle was intended or could reasonably have been the substantially likely result from filing the police report.

The complaint fails to satisfy the requirement of facts sufficient to state that Defendant's actions were the cause of malicious injury to Wilmot.

### 3.   *Radzinski's Injuries Were Not Malicious*.

The report to the Sheriff's Office included facts directly related to the actions of Radzinski. On Friday, October 21, 2022, she wrote a check for Wilmot's benefit to Yeti. It was the down payment for the truck he was picking up. Two days later she stopped payment on that check.

Radzinski and Wilmot were sued to collect payment on that check. While that was a civil collection matter, it also may have been in Defendant's mind a criminal matter. Defendant did text Radzinski seeking to get the down payment and stating his hope that could occur without contact with the authorities. Payment did not result.

Having been told both that this was a civil matter and that it may be a crime, Defendant gave the transaction documents to Cambrya Hurlburt. She took them to the authorities.

No facts are pled to support the claim that Defendant knew making a report of something that might be a crime would result in an arrest or prosecution. Defendant is not a lawyer. Possible crimes are often reported. That does not mean law enforcement concludes there is a crime or that there is an arrest. Further, a district attorney may decline prosecution for a variety of reasons.

Radzinski assumes that because a civil matter was pending it was improper to provide information to the Sheriff's Office for consideration. She ignores the fact that both she and Wilmot were interviewed by deputies. She complains that Defendant did not tell the Sheriff's Deputy this was a civil matter already in small claims court. But she did tell the deputy those facts before any decision was made by him to arrest her. It was the deputies who, after interviewing her, decided to make an arrest and bring the matter before a judge for a probable cause decision and bail.

No facts are contained in the complaint that Defendant knew or should have known that an arrest would follow a report. And even if there were an arrest, there are no facts or evidence there was a deliberate intent to cause injury. The facts do support a claim that Merkel intended to make a report to authorities who might reach a conclusion there could be a crime. If so, the matter might go before a judge and to a prosecutor.

Radzinski says that initially when she was arrested, she was told by the deputy she would be booked and then released. Later she says another deputy

20

called the Sheriff and she was put in jail. Neither of these facts supports a conclusion that Merkel intended the injuries she says she sustained.

A judge reviewed the basic facts. He determined there was probable cause but granted release on a signature bond. The district attorney declined prosecution. That does not mean there were charges decided in Radzinski's favor.

Being arrested, searched, placed in jail, and not having access to medication for a period are plausible claims that injury exists. But the injury must have been "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau*, 523 U.S. at 61.

The act at issue is providing documents that were given to the Sheriff's Office as a report of a possible crime. Goods were received by Wilmot in exchange for a down payment provided by Radzinski and a written purchase agreement. That down payment allowed him to take possession of the vehicle and to receive the title to the vehicle. And there are no facts alleged to support an objective finding that simply making a report to law enforcement of undisputed facts about a stop payment on a check would result in an arrest and detention unless and until law enforcement concluded there was probable cause that a crime may have been committed. And even if facts indicate the existence of a potential criminal act, a district attorney may decline prosecution for a variety of reasons.

Assuming there were sufficient funds at the time the check was written, Radzinski took steps within two days of writing the check to stop payment.

21

That stop payment order was issued on a Sunday. By doing so, she demonstrated an intent that the check not be paid. She also continued the deception she intended to replace the payment by lying about losing her purse, needing to protect her account, and promising to bring in a replacement check.

The delivery of the down payment permitted Wilmot to take possession of the vehicle and obtain the title. Whether these acts could have been viewed as a possible violation of Wisconsin law is a question that typically would be made by law enforcement and then a prosecutor. Making a report of the facts does not lead to the conclusion there is no just cause or excuse for making a police report. Neither is making a report under those circumstances knowingly wrongful.

The complaint fails to satisfy the requirement of facts sufficient to state that Defendant's actions were the cause of malicious injury to Radzinski.

B.  Plaintiffs' Injuries Were Not Willful.

Radzinski wrote a check for $3,000 that enabled Wilmot to take the vehicle and title. Two days later, Radzinski stopped payment on the check. Radzinski gave a series of excuses for stopping payment, including that her purse had been stolen. Those statements were not true.

Wilmot kept the vehicle. Neither he nor Radzinski replaced the missing down payment.

Yeti commenced an action against Plaintiffs. It was contested and ordered to mediation. Merkel was told by someone at the Clerk of Court's Office it was civil matter. He was also told it may be a crime.

22

Wilmot and Radzinski were each interviewed by a deputy. The truck was impounded after Wilmot's interview. No further action was taken against him.

Radzinski voluntarily went to the station to be interviewed. A member of the Sheriff's Department made a decision to arrest and charge her with a crime.

Defendant was aware Cambrya Hurlburt was going to speak to the Sheriff's Office and file a report. But the requirement for nondischargeability includes the essential element that there must be a willful injury.

"The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau*, 523 U.S. at 61. Put another way, section 523(a)(6) covers "only acts done with the actual intent to cause injury," not "acts, done intentionally, that cause injury." *Id.*, 523 U.S. at 61 (footnote omitted).

There is no allegation Defendant intended either that the vehicle be impounded or that Radzinski be arrested and jailed. Plaintiffs say the reason for making the police report was to gain leverage in the civil court case. Gaining advantage or leverage is, according to Plaintiffs, evidence of intended harm. This assumption is conclusory and not a statement of fact.

It is claimed that the relationship among the Sheriff, a deputy, and Cambrya Hurlburt somehow unduly influenced the seizure of the truck and the arrest and detention of Radzinski. That is harm according to Plaintiffs.

23

But there is no factual assertion in the complaint that Defendant intended Radzinski would be arrested and placed in jail. No facts were stated that the other actions that occurred during her arrest and confinement were intended or deliberate. And there are no facts presented that Merkel intended that the vehicle be impounded.

While there are conclusory assertions that the conduct was that of Defendant and was intentional, those are not objective facts. In conclusory fashion, Plaintiffs say Defendant and others:

- "caused law enforcement to seize Wilmot's vehicle"

- "orchestrat[ed] ... a criminal complaint"

- "...Merkel [was] actively involved in improperly and maliciously instituting the criminal proceedings against Ms. Radzinski"

- "criminal proceedings were terminated in favor of Ms. Radzinski when the District Attorney's Office declined prosecution."

To the contrary, setting aside the speculation and innuendo in the complaint regarding "orchestrating" a criminal complaint and threatening use of the authorities, it was members of the Sheriff's Department that seized the vehicle, arrested Radzinski, and referred the matter to the district attorney.

Wilmot complains that impounding his truck violated various consumer protection laws. This would require that the purchase qualifies as a consumer transaction.

To be covered by consumer protection laws, the transaction has to be with a "Customer." Neither Plaintiff was a customer. That requires a "person . . . who seeks . . . personal property . . . for personal, family, or household

24

purposes." Wis. Stat. § 421.301(17). The purpose of the purchase here was a vehicle for use in a snowplowing business. There was not a consumer transaction. It was the purchase of a vehicle for use in a business. Thus, the WCA doesn't apply.

A judge made a probable cause determination for theft in a business setting under Wis. Stat. § 943.20(1)(b). The judge set bail and ordered Radzinski's release. Subsequently, the district attorney declined prosecution.

This is not termination of a criminal proceeding in favor of the Plaintiff. The complaint says the district attorney declined to prosecute the case. On that basis there was no regular judicial proceeding that would have resulted in a determination in favor of the Plaintiff.

While a report to law enforcement is an intentional act, no facts are pled to support the conclusion that the injuries complained of by Plaintiffs were intended to occur. The complaint fails to allege facts to support the conclusion that the report to the Sheriff's Office was intended to cause injury.

The complaint fails to satisfy the requirement that there were willful injuries to Plaintiffs based on the acts of Merkel.

## CONCLUSION

Based on the above and the record and file, the Defendant's Motion to Dismiss Complaint for failure to state a claim under Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6) is hereby granted.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order and judgment consistent with this decision will be entered.

Dated: July 29, 2026

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge